In the Matter of Rehabilitation of THE UNIVERSE LIFE INSURANCE COMPANY, Certificate of Authority SMR No. 1050.

State of Idaho, ex rel. Mary Hartung, as successor to James M. Alcorn, Acting Director of the Idaho Department of Insurance, as Rehabilitator for the Universe Life Insurance Company, Petitioner,

v.

The Centennial Life Insurance Company, Respondent.

Kathleen Sebelius, Commissioner of the Kansas Department of Insurance in her Statutory Capacity as Rehabilitator of the Centennial Life Insurance Company, and her Special Deputy Rehabilitator, Dan Watkins, Appellants,

v.

State of Idaho, ex rel. Mary Hartung, as successor to James M. Alcorn, Acting Director of the Idaho Department of Insurance, as Rehabilitator for the Universe Life Insurance Company; AIA Services Corporation, AIA Insurance, Inc., and the Board of Directors and Management of the Universe Life Insurance Company; Grain Growers Membership and Insurance Trust; the Centennial Life Insurance Company, Respondents. (AXA Reassurance, S.A. and AXA Re Life Insurance Company, Garnishees.)

No. 98–2416–JWL.

United States District Court, D. Kansas.

Jan. 14, 1999.

Mark A. Shaiken, Stinson, Mag & Fizzell, P.C., Douglas J. Schmidt, Blackwell Sanders Peper Martin LLP, Kansas City, MO,Daniel M. Dibble, Michael J. Abrams, Lathrop & Gage L.C., for Universe Life Ins. Co.

Richard D. Rhyne, Kenton E. Snow, John C. Craft, Craft, Fridkin & Rhyne, Kansas City, MO, Mark A. Shaiken, Stinson, Mag & Fizzell, P.C., Douglas J. Schmidt, Blackwell Sanders Peper Martin LLP, Kansas City,

MO, Daniel M. Dibble, Michael J. Abrams, Lathrop & Gage L.C., Kansas City, MO, for Idaho Department of Insurance.

Douglas J. Schmidt, Michael M. Tamburini, Nancy S. Jochens, Blackwell Sanders Peper Martin LLP, Kansas City, MO, for Centennial Life Ins. Co.

Frank Wendt, Michael E. Waldeck, Angela K Green, Niewald, Waldeck & Brown, P.C., Kansas City, MO, for AXA Reassurance, S.A., AXA Re Life Ins. Co.

### MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

The Rehabilitator of the Universe Life Insurance Company ("Universe"), an insolvent insurer in rehabilitation proceedings in Idaho state court, obtained a judgment in Idaho state court against Centennial Life Insurance Company ("Centennial"), an insolvent insurer currently in liquidation proceedings in Kansas state court. Thereafter, Universe initiated this garnishment action in an effort to attach certain reinsurance proceeds allegedly owed Centennial by Centennial's reinsurer, AXA Reassurance, S.A. and AXA Re Life Insurance Company ("AXA") under contracts of reinsurance between Centennial and AXA.

This matter is presently before the court on two motions—Universe and AXA's motion to stay (doc. # 14) and Rehabilitator and Special Deputy Rehabilitator of the Centennial Life Insurance Company's ("Liquidators") motion to quash the garnishment or, in the alternative, to dismiss the garnishment action (doc. # 15). Universe and AXA move to stay the garnishment action pending a determination of AXA's liability to Centennial under the reinsurance agreements—the subject of a separate action pending before the court. *See Centennial Management Servs., Inc. v. AXA Re Vie*, Case No. 97–2509–JWL (filed Oct. 3, 1997). Liquidators move to quash the garnishment because, according to Liquidators, the garnishment was obtained in contravention of the statutory schemes of Kansas and Idaho and because enforcement of the garnishment is prohibited by the Final Order of Liquidation. In the

alternative, Liquidators move to dismiss the garnishment action based on various abstention doctrines. As set forth in more detail below, the court agrees with Liquidators that it should abstain from exercising jurisdiction in the garnishment action, but concludes that a stay pending the conclusion of the liquidation proceedings in state court, rather than an outright dismissal, is the appropriate remedy under the circumstances.[1] Thus, Liquidators' motion to quash or dismiss is denied, although the court will stay the garnishment action pending a conclusion of the liquidation proceedings in state court. Moreover, because Universe and AXA move to stay pending a determination of AXA's liability to Centennial, the court denies that motion in its entirety.

*Background*

The facts of this case are relatively simple. In April 1994, the Idaho Department of Insurance placed Universe into voluntary supervision. In response to concerns over Universe's inadequate capital and surplus, certain group health insurance policies known as Group Universal Health (GUH) policies were transferred from Universe to Centennial in October 1994. In exchange for Centennial's acquisition of Universe's GUH liability, Universe agreed to transfer to Centennial assets equal to Universe's statutory reserves for the transferred liabilities. In March 1996, Universe was placed in rehabilitation proceedings. In connection with these proceedings, Universe proposed a plan for rehabilitation which provided, in part, for the rescission of the transfer agreements between Universe and Centennial. Universe and Centennial thereafter stipulated to the entry of a Rescission Order by the Idaho Rehabilitation Court.

On February 4, 1998, Centennial was placed in rehabilitation proceedings in Kansas state court. Two weeks later, Universe obtained a judgment against Centennial in Idaho state court arising out of the rescission of the transfer agreements between Universe and Centennial in the net amount of $5,773,516 plus interest.[2] On May 26, 1998, Uni-

---

1. In light of its resolution of the threshold jurisdictional issue—that an exercise of jurisdiction at this time would be inappropriate under *Burford* abstention principles—the court refrains from engaging in an analysis of whether the garnishment should be quashed.

2. Judgement was entered against Centennial in the amount of $19,273,516 plus interest, less $13,500,000 previously transferred to Universe.

verse initiated a garnishment proceeding in Idaho state court and obtained a writ of execution directing the sheriff to satisfy the judgment against Centennial out of Centennial's property. On the same day, the Idaho state court issued a Notice of Garnishment to AXA purporting to attach all debts owed by AXA to Centennial. The garnishment proceeding was subsequently removed to the United States District Court for the District of Idaho and, recently, was transferred to this court.

On May 27, 1998, the Shawnee County District Court held a hearing on the Centennial Rehabilitator's liquidation petition (filed April 21, 1998) and issued its Final Order of Liquidation, finding that Centennial was insolvent as defined by K.S.A. § 40–3607(k)(2) and placing Centennial into liquidation pursuant to K.S.A. §§ 40–3620, –3621.

*Analysis*

Liquidators contend, *inter alia*, that the abstention doctrine recognized by the Supreme Court in *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), requires the court to abstain from exercising jurisdiction over this case and to remand the garnishment action to state court. As set forth in more detail below, the court concludes that abstention under *Burford* is appropriate under the circumstances presented here and, because Universe seeks monetary relief rather than equitable or other relief committed to the discretion of the court, stays the garnishment action pending resolution of the liquidation proceedings in state court. *See Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 730, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996) (power to dismiss under the *Burford* doctrine lies only with those federal courts "asked to provide some form of discre-

tionary relief"; federal courts applying abstention principles in actions may "withhold action until the state proceedings have concluded," but cannot dismiss the action altogether).[3]

Before addressing the propriety of *Burford* abstention, the court acknowledges that it has a "virtually unflagging obligation" to exercise jurisdiction given it. *See Quackenbush*, 517 U.S. at 716, 116 S.Ct. 1712 (quoting *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 821, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976)). Indeed, the Supreme Court has cautioned that abstention from the exercise of federal jurisdiction is the exception rather than the rule:

> The doctrine of abstention, under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it. Abdication of the obligation to decide cases can be justified under this doctrine only in the exceptional circumstances where the order to the parties to repair to the State court would clearly serve an important countervailing interest.

*Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 14, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) (quoting *Colorado River*, 424 U.S. at 813, 96 S.Ct. 1236); *accord Quackenbush*, 517 U.S. at 728, 116 S.Ct. 1712 ("[T]he power to dismiss recognized in *Burford* represents an 'extraordinary and narrow exception to the duty of the District Court to adjudicate a controversy properly before it.'") (quoting same).

Bearing these principles in mind, the court turns to address whether an application of *Burford* abstention is appropriate here. *Burford* abstention, as distinguished from other abstention doctrines,[4] is concerned with pro-

---

3. In light of the Supreme Court's distinction between those circumstances that require dismissal of a suit and those that require postponing consideration of its merits, it may be more appropriate to refer to *Burford* abstention in this case as *Burford* "deferral." *See Growe v. Emison*, 507 U.S. 25, 32, 113 S.Ct. 1075, 122 L.Ed.2d 388 n. 1 (1993) (noting that "it would be preferable to speak of *Pullman* 'deferral'" in cases that require postponing consideration of the merits rather than an outright dismissal). Nonetheless, after more than a half-century in which courts and commentators have spoken of *Burford* abstention, the court believes that use of the phrase

"*Burford* deferral" would be more confusing than clarifying. *See* 17A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 4241 (2d ed. Supp. 1998) (declining to use the phrase "*Pullman* deferral" because it would be more confusing than clarifying).

4. There are three other abstention doctrines recognized by the Supreme Court. *See Railroad Comm'n of Texas v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941) (federal court may abstain in cases presenting a federal consti-

tecting complex state administrative processes from undue federal influence. *See New Orleans Pub. Serv., Inc. v. Council of City of New Orleans ("NOPSI")*, 491 U.S. 350, 362, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989) (reviewing development of *Burford* doctrine). As the Supreme Court recently reiterated, *Burford* abstention "allows a federal court to dismiss a case only if it presents 'difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar,' or if its adjudication in a federal forum 'would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.'" *Quackenbush*, 517 U.S. at 726–27, 116 S.Ct. 1712 (quoting *NOPSI*, 491 U.S. at 361, 109 S.Ct. 2506 (quoting *Colorado River*, 424 U.S. at 814, 96 S.Ct. 1236)). Because Liquidators have not identified any "difficult questions of state law bearing on policy problems of substantial public import," the principal question presented here is whether this court's exercise of jurisdiction would disrupt the state's efforts to create and maintain a coherent policy on liquidating insolvent insurance companies. As described in more detail below, the court concludes that an adjudication of the garnishment action in federal court would disrupt such efforts.[5]

The Tenth Circuit has analyzed the propriety of *Burford* abstention in the insurance liquidation context. *See Grimes v. Crown Life Ins. Co.*, 857 F.2d 699 (10th Cir.1988).[6] The dispute in *Grimes* arose out of efforts by the Oklahoma Insurance Commissioner, as liquidator of an insolvent insurance company, to realize on a reinsurance agreement entered into between the insolvent insurer and the reinsurer. *Id.* at 700. The liquidator sought and received permission from the receivership court to file a declaratory judgment action against the reinsurer in state court. *Id.* The reinsurer successfully petitioned for removal of the declaratory judgment action from state to federal court. *Id.* Arguing that the federal district court did not have jurisdiction to hear the case, the liquidator moved to remand the case to state court. *Id.* The district court declined to remand the case and, thereafter, decided all issues in favor of the reinsurer. *Id.* at 700–01.

On appeal, the liquidator argued that even if the district court had jurisdiction, the court should have abstained from exercising it. *Id.* at 703. Analyzing the liquidator's argument, the Tenth Circuit concluded that the abstention principles set forth in *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), were the most applicable under

tutional issue which may be disposed of by a state court ruling on state law) (*Pullman* abstention); *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) (federal court must abstain in cases filed to enjoin state enforcement proceedings absent a showing of bad faith, harassment, or other unusual circumstances calling for equitable relief) (*Younger* abstention); *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976) (federal court may abstain when parallel state court proceedings are pending) (*Colorado River* abstention).

5. In addition, a federal court cannot abstain under *Burford* unless "timely and adequate state-court review is available." *See NOPSI*, 491 U.S. at 361, 109 S.Ct. 2506. Universe has not suggested that such review is unavailable and, indeed, it seems undisputed that timely and adequate review of Universe's claim would be available in the Shawnee County District Court. Thus, the court deems it unnecessary to analyze further this requirement.

6. Although the vitality of *Grimes* has been called into question in light of *NOPSI, see Todd v. DSN Dealer Serv. Network, Inc.*, 861 F.Supp. 1531,

1539 (D.Kan.1994), the only apparent basis for these questions is *NOPSI*'s suggestion (later confirmed by the Supreme Court in *Quackenbush*) that only courts "sitting in equity" have the power to dismiss a case under *Burford*. Thus, the only aspect of *Grimes* that appears to be rendered inaccurate in light of *NOPSI* is the extent to which *Grimes* suggests that a federal court in a damages action could dismiss the case under *Burford*. There is no reason to believe that *NOPSI* has abrogated the rule favoring abstention in deference to state insurance insolvency or liquidation proceedings. In fact, several circuits faced with this issue post-*NOPSI* have held that abstention under *Burford* is appropriate in the context of insurance liquidation proceedings. *See, e.g., Clark v. Fitzgibbons*, 105 F.3d 1049, 1051–52 (5th Cir.1997); *Hartford Casualty Ins. Co. v. Borg–Warner Corp.*, 913 F.2d 419, 425–26 (7th Cir.1990). In short, this court believes that the principles set forth by the Tenth Circuit in *Grimes* with respect to whether a federal court should abstain under *Burford* in cases involving insolvent insurance companies in liquidation proceedings remain good law.

the circumstances. 857 F.2d at 703. Moreover, the Circuit identified several factors relevant to the determination of whether a federal court should abstain under *Burford* in cases involving insolvent insurance companies and the liquidation process:

> (1) whether the suit is based on a cause of action which is exclusively federal; (2) whether the suit requires the court to determine issues which are directly relevant to the liquidation proceeding or state policy in the regulation of the insurance industry; (3) whether state procedures indicate a desire to create special state forums to regulate and adjudicate these issues; and (4) whether difficult or unusual state laws are at issue.

*Id.* at 704–05 (citations omitted); *accord Hartford Casualty Ins. Co. v. Borg–Warner Corp.,* 913 F.2d 419, 425–26 (7th Cir.1990) (applying four-factor test set forth by Tenth Circuit in *Grimes* and determining that *Burford* abstention was appropriate because federal litigation between insolvent insurer and its creditors would interfere with proceedings in state rehabilitation court).

Applying these factors to the case before it, the Tenth Circuit held that the district court erred when it declined to abstain under *Burford. Grimes,* 857 F.2d at 706. In reaching its conclusion, the court focused on the fact that Oklahoma had adopted "a complex and comprehensive scheme of insurance regulation" which specifically provided for the liquidation of an insolvent insurer and had established a special forum to handle the liquidation proceedings. *Id.* at 705. The Circuit also emphasized that the case implicated only state law issues which involved "fundamental and important" questions of state law and policy regarding the liquidation of insolvent insurers "which the Oklahoma County District Court should be allowed to answer in the first instance." *Id.* Ultimately, the Tenth Circuit concluded that the exercise of federal jurisdiction "would disrupt the ability of the state officers of Oklahoma in conjunction with the Oklahoma County Dis-

trict Court to devise and efficiently operate a complex system of administrative and judicial interrelationships which makes up the statutory scheme for liquidating insolvent insurers in Oklahoma." *Id.* at 706.

An application of *Grimes* to the garnishment action here mandates the conclusion that *Burford* abstention is appropriate. Significantly, Kansas has formulated a complex and comprehensive statutory scheme governing the liquidation of insolvent insurers, *see* Kansas Insurers Supervision, Rehabilitation and Liquidation Act, K.S.A. § 40–3605 et seq., and the issues presented in this garnishment action are solely issues of state law which are directly relevant to that statutory scheme.[7] The provisions of this Act specify not only that the venue of any delinquency proceedings shall be in Shawnee County District Court, but also that "exclusive original jurisdiction" of those proceedings will lie with that court. *See* K.S.A. § 40–3608(b) & (e). Of particular relevance for purposes of this garnishment action are the provisions directing the appointment of the Kansas Insurance Commissioner as liquidator who has the power to "collect all debts and moneys due and claims belonging to the insurer, wherever located;" to "take possession of the assets of the insurer;" and to "administer such assets under the general supervision of the court." K.S.A. §§ 40–3622, –3625(a)(8). In addition, the Act contains specific provisions relating to the claims of creditors, including the filing and proof of such claims as well as the priority of distribution of such claims. *See* K.S.A. §§ 40–3632, –3636 to –3642. Along those lines, the statutory scheme precludes the commencement or maintenance of a garnishment action against an insolvent insurer or its assets during the pendency of the liquidation proceedings. *See* K.S.A. § 40–3655.

These provisions clearly demonstrate a desire to create a special state forum to regulate and adjudicate issues relating to the

---

7. Universe argues that *Burford* abstention is inappropriate because the "overriding issue" here is one of federal law—whether the Idaho judgment is entitled to full faith and credit in Kansas under Article IV, section 1 of the United States Constitution and 28 U.S.C. § 1738. The court is not persuaded by this argument. The mere fact

that the state court may face issues which call for some interpretation of federal law or the United States Constitution does not convert the garnishment action into a "cause of action which *is* exclusively federal." *See Todd v. DSN Dealer Serv. Network, Inc.,* 861 F.Supp. 1531, 1543–44 (D.Kan.1994).

liquidation of an insolvent insurance company. Kansas, by statute, has created a "special relationship of cooperation, technical oversight and concentrated review" between the Shawnee County District Court and the Kansas Insurance Commissioner in the process of liquidating insurers. *See Grimes,* 857 F.2d at 705. In such circumstances, the Tenth Circuit has recognized that "it becomes increasingly possible that the exercise by a federal court of its jurisdiction will prove to be 'disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.' " *See Grimes,* 857 F.2d at 703. In this case, permitting Universe to proceed in federal court would defy common sense and would undermine the comprehensive apparatus established by the State of Kansas for the orderly disposition of claims against insolvent insurance companies like Centennial. *See Clark v. Fitzgibbons,* 105 F.3d 1049, 1051–52 (5th Cir.1997). In essence, Universe seeks to "leapfrog" ahead of all other claimants, who are bound to bring their claims before the Shawnee County District Court. *See Hartford Casualty Ins. Co. v. Borg–Warner Corp.,* 913 F.2d 419, 426 (7th Cir.1990) (rejecting creditor's attempt "to jump ahead of [insurer's] other creditors by filing a lawsuit outside the state rehabilitation proceedings"). As one court has recognized, permitting one claimant to jump ahead of other claimants by proceeding to federal court "would start a race to the courthouse in any jurisdiction where claims ... might have arisen." *Clark,* 105 F.3d at 1051. The administrative structure established by Kansas to rehabilitate or liquidate insolvent insurers would "swiftly crumble." *See id.*

Universe urges this court to hear the garnishment action on "fairness and consistency" grounds because the liability dispute between Centennial and AXA is also pending before the court. Whether AXA is liable to Centennial on the reinsurance agreements is certainly relevant to Universe's garnishment action. That liability determination, however, would not be the end of the inquiry for purposes of Universe's garnishment action.

For this court to hear the garnishment action, it would have to determine not only whether AXA is indebted to Centennial, but also the validity, amount and priority of Universe's claim against Centennial—issues that will also be decided in the state rehabilitation court. The possibility of inconsistent decisions between the state and federal systems would lead to incongruous results, with Universe perhaps receiving more than it should have been entitled to receive. *See Hartford,* 913 F.2d at 426 (affirming district court's decision to abstain under *Burford* in part because of possibility of incongruous results); *Todd v. DSN Dealer Serv. Network, Inc.,* 861 F.Supp. 1531, 1543 (D.Kan. 1994) (abstaining under *Burford* in insurance liquidation context where exercise of jurisdiction "would create risk of duplication, inconsistent results, and unnecessary federal court interference with and disruption of the Kansas statutory framework for the liquidation of insolvent insurers"). Abstention pending the resolution of the liquidation proceedings effectively addresses these concerns and ensures that this court does not frustrate clear efforts by the State of Kansas to maintain its uniform and coherent policy for handling Centennial's liquidation.

The court's decision here is also informed by congressional policy, evidenced in the McCarran–Ferguson Act,[8] encouraging states to formulate their own systems to regulate insurers doing business in their states. Allowing Universe to pursue its garnishment in federal court would lead to a system where the states would not control the ultimate distribution to creditors of insolvent insurers. As the Seventh Circuit has stated, "such a federal usurpation of state control over insolvent insurers would be inconsistent with the McCarran–Ferguson Act and general notions of comity." *See Hartford Casualty Ins. Co.,* 913 F.2d at 426; *accord Clark v. Fitzgibbons,* 105 F.3d 1049, 1051 (5th Cir.1997) ("[A]llowing a creditor or claimant to proceed against an insolvent insurer in federal court while a state insolvency proceeding is pending would ... violate the

---

**8.** The McCarran–Ferguson Act states, in relevant part, as follows:

No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by

any State for the purpose of regulating the business of insurance.

15 U.S.C. § 1012.

policy of the McCarran–Ferguson Act."). *See also Todd v. DSN Dealer Serv. Network, Inc.*, 861 F.Supp. 1531, 1543 (D.Kan.1994) ("The nature of these issues is complex, and the Kansas courts should have the opportunity to shape this law since it involves an area that Congress intended by the McCarran–Ferguson Act to be reserved to state regulation."); *Todd v. Richmond,* 853 F.Supp. 1309, 1315 (D.Kan.1994) (rulings by the federal court on issues directly relevant to liquidation proceedings "would impinge on an area that Congress intended by the McCarran–Ferguson Act to be reserved for state regulation"). In fact, the Tenth Circuit recently held that a district court properly abstained, under the McCarran–Ferguson Act, from enforcing arbitration of a dispute between a corporation and the liquidator of an insurance company under liquidation proceedings in Utah state court. *See Davister Corp. v. United Republic Life Ins. Co.*, 152 F.3d 1277 (10th Cir.1998). In reaching its conclusion, the court emphasized that "[a]llowing a putative creditor to pluck from the entire liquidation proceeding one discrete issue . . . contrary to the blanket stay entered by the [ ] state court would certainly impair the progress of the orderly resolution of all matters involving the insolvent company." *Id.* at 1281. Similarly, allowing Universe to pursue its garnishment "in a forum other than the receivership court . . . conflicts with [state] law giving the state court the power to enjoin any action interfering with the delinquency proceedings" and would disrupt the orderly resolution of all matters involving Centennial. *See Davister,* 152 F.3d at 1282 (quoting *Munich American Reinsurance Co. v. Crawford,* 141 F.3d 585, 595 (5th Cir.1998), *cert. denied sub nom. American Re–Insurance Co. v. Crawford,* —— U.S. ——, 119 S.Ct. 539, 142 L.Ed.2d 448 (1998)).

In short, the court concludes that its exercise of jurisdiction in the garnishment action would be disruptive of state efforts to maintain a coherent policy with respect to the liquidation of insolvent insurance companies. *See NOPSI,* 491 U.S. 350, 363, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989). Accordingly, the court will abstain under *Burford* from exercising its jurisdiction in this case. Consistent with the Supreme Court's directive in *Quackenbush,* however, the court will not dismiss the action but will simply stay the action until the liquidation proceedings in state court reach a conclusion. *See Quackenbush v. Allstate Ins. Co.,* 517 U.S. 706, 730, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996) (federal courts applying *Burford* abstention principles in damages actions are permitted only to "withhold action until the state proceedings have concluded" and are not permitted to dismiss the action altogether). As another court has recognized,

> [t]his approach retains the sensitivity for concerns of federalism and comity implicated by *Burford* abstention, while preserving [plaintiffs'] right to litigate their claims in the federal forum should the [state court], for jurisdictional or other reasons, fail to adjudicate them. The entry of a stay rather than a dismissal prevents those claims from becoming time-barred should jurisdiction be somehow lacking in the [state court], and the preclusion doctrines of res judicata and collateral estoppel will prevent their re-litigation in the more likely event that court proceeds to judgment.

*Feige v. Sechrest,* 90 F.3d 846, 851 (3rd Cir. 1996) (district court properly stayed action under *Burford* abstention doctrine until conclusion of insurance liquidation proceedings in state court) (post-*Quackenbush* ).

**IT IS THEREFORE ORDERED BY THE COURT THAT** the Rehabilitator of the Universe Life Insurance Company, AXA Reassurance, S.A. and AXA Re Life Insurance Company's motion to stay (doc. # 14) is **denied.** The Rehabilitator and Special Deputy Rehabilitator of the Centennial Life Insurance Company's motion to quash the garnishment or, in the alternative, to dismiss the action (doc. # 15) is **denied.** The garnishment action is stayed until the conclusion of the liquidation proceedings in state court.

**IT IS SO ORDERED.**